DAVID LIZER v. DANIEL CLUBINE ET AL., Appellants.

Quieting title: BOUNDARY: ADVERSE POSSESSION: EVIDENCE. Where one party to an action to quiet title to a strip of land sold from certain lots has shown by a preponderance of the evidence that the boundary of the adjacent lot was a fixed line, and was also the boundary of the lots from which the strip was sold prior to its conveyance, he has established the line from which the strip sold is to be measured, and the other party in seeking to show a different boundary by acquiescence and adverse possession must establish the facts upon which he relies by a preponderance of the evidence. Evidence held insufficient to show title by adverse possession to a boundary claimed by acquiescence.

*Appeal from Buchanan District Court.*—HON. A. S.
BLAIR, Judge.

SATURDAY, NOVEMBER 21, 1908.

ACTION to quiet title to a strip of land within the
limits of the original plat of the town of Jessup. There
was a decree for plaintiff, and defendants appeal.—
*Affirmed.*

*C. J. Rudolph,* for appellants.

*C. M. Young* and *Ellis E. Wilson,* for appellee.

McCLAIN, J.—Plaintiff, on whose death pending the
appeal his administrator has been substituted, brought this
action to have determined the title to a ten-foot strip off
the east end of lots 17 and 24 of Merrill's subdivision in
the original plat of the town of Jessup, which lots as
platted abut at their east end on the lot owned by defend-
ant described as lot 136 of the original plat of Jessup.
The defendants are Daniel Clubine and his wife, the
legal title of lot 136 being in his wife, but as the husband
seems to have managed the property and to have been the
principal witness in the case, it will be more convenient
to treat him as defendant.

There is no question between the parties as to the
ownership by defendant of lot 136 and the east ten feet
of lots 17 and 24 of Merrill's subdivision. The sole con-
troversy is as to the west boundary line of lot 136 from
which to measure the ten-foot strip described as the east
ten feet of lots 17 and 24 purchased by defendant from
plaintiff's grantor. Defendant purchased lot 136 and went
into possession thereof in 1866, and has resided thereon
continuously ever since. From about that time until the
present there has been a fence continuously maintained

by defendant and the owner of the lots now belonging to plaintiff which runs north and south about twelve feet west of defendant's house. In 1894 defendant purchased from the then owner ten feet off the east end of the two lots abutting upon his lot to the west, and about two years before the institution of this suit, by moving his fence over to the westward, asserted in a tangible and permanent way a right to a strip of land west of his original fence as belonging to him under this purchase. Plaintiff's claim, which is supported by the evidence of several surveys based on corner stakes which surveyors believed to mark the boundaries of lot 136 on the west, is that the true boundary between lot 136 and the lots abutting upon it to the west is about two and one-half feet west of defendant's house, and that the ten-foot strip purchased by defendant to the west only extended his premises to the original fence, which therefore now constitutes the true boundary line between the ten-foot strip purchased by the defendant and the remainder of the lots owned by plaintiff. Defendant meets this claim of title on the part of plaintiff with the contention, supported by his own testimony, that the original fence west of his house has always been recognized as the west line of lot 136, and that this being the true line by acquiescence between him and the owners of the lots abutting to the west, when he purchased ten feet off the east end of said abutting lots he acquired title to a ten-foot strip west of this old fence.

Defendant's testimony is somewhat corroborated by that of a witness who claims that about 1882 or 1883 he repaired the fence for the then owner of the lots abutting to the west, who recognized the fence as the true boundary line. If defendant's claim as to acquiescence and adverse possession to the old fence as the western boundary of lot 136 is made out, then defendant should succeed in this action, but if it is not made out, then plaintiff should succeed, for he establishes by a substantial preponderance of

the evidence that the real western boundary of lot 136 according to the plat is two and one-half feet west of defendant's house, and that this line was also the eastern boundary of the lots now owned by plaintiff before the eastern ten feet thereof were conveyed to defendant.

But defendant's claim of adverse possession to the old fence as the western boundary of lot 136 is not supported by a preponderance of the evidence. One Merrill, who in 1868 platted the lots west of lot 136 testifies that a fence on the line now claimed by defendant to be the west line of that lot was constructed across the east end of his lots, and ten feet west of the true boundary of lot 136, at the request of Mrs. Clubine, so as to give to the Clubines a driveway past their house to the barn at the north end of lot 136, which barn was substantially on the west line of the lot as originally platted, and that at the barn this fence was carried eastward to the barn itself, and that so long as witness owned these lots the Clubines made no claim of title of this ten-foot strip. This testimony is at least plausible, in view of the fact that according to the original plat of the town of Jessup lot 136 was alongside a street which was subsequently vacated and included in the lots platted abutting on the west line of that lot. When defendant purchased the ten-foot strip to the west of his lot in 1894, his purpose seems to have been, as indicated by the negotiations with his grantor, who is also a witness for the plaintiff, to acquire title to the old fence so as to permanently assure himself of a driveway to his barn. Subsequently defendant seems to have conceived the idea that by reason of some alleged surplus in the original plat of Jessup his true western boundary according to the plat was further west than the line of the original survey, but not so far west as the old fence, and on some such theory he secured an agreed boundary line with one Mrs. Decker, owning property north of that now belonging to plaintiff, and also west of

defendant's lot 136, which does not correspond either with the north and south line of the old fence or with the surveyed line of lot 136; and while it appears that on one occasion defendant did advise plaintiff of a claim to a strip of the full width of ten feet west of the old fence, when he came to put in the new fence on what he assumed to be the western line of his ten-foot strip he placed it only about four or five feet west of the old fence. Defendant has not therefore consistently claimed by adverse possession to the old fence as the western boundary of lot 136, and if his use of the ten-foot strip between his true line and the old fence was permissive only in the beginning and not under claim of right, then there was no point of time at which such use became adverse, and the old fence an acquiesced boundary line, for there had been no change of situation or method of use from the beginning until the construction of the new fence. It is contended for appellant that plaintiff can recover only on the strength of his own title. Conceding this to be true, plaintiff establishes his title by proving what was the original boundary line between lot 136 and the lots abutting upon it to the west as subsequently platted, and the defendant seeking to show a different boundary line by acquiescence or adverse possession must establish by preponderance of the evidence the facts on which he relies. This we think he has failed to do.

What is said in defendant's testimony and in arguments of counsel with reference to a surplus in the original plat of Jessup is of no consequence in the determination of the case, for neither party establishes the existence of any such surplus nor relies on the fact as affecting the true boundary line. This claim of defendant does, however, explain his action in placing the new fence only four or five feet west of the old fence. It seems to have been defendant's theory when this fence was constructed and when he testified as a witness in this case that there were

some feet of surplus belonging to him and extending his lot to the west beyond the line of the original survey. We need not go further into this question, for if defendant did not acquire title by adverse possession to the old fence as the agreed boundary line of lot 136, then, as his counsel now practically concede, the old fence is the western boundary of the ten-foot strip purchased in 1894. In other words, the sole question is, did defendant, when he bought the ten-foot strip, simply acquire title to the old fence which is shown to be ten feet west of the platted western line of lot 136, or did he acquire a ten-foot strip west of the old fence? On this question, we think the preponderance of the evidence is with the plaintiff, and the decree of the trial court is *affirmed.*